UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANNA M. TORRES,

                                          Plaintiff,

v.

**REPORT AND RECOMMENDATION**

15-CV-1037-MAT-JJM

NANCY A. BERRYHILL, [1]
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,
                                       Defendant.
_____

**INTRODUCTION**

Before the court are the parties' cross-motions for judgement on the pleadings [8, 11].[2] For the reasons stated below, I recommend that this case be remanded for further administrative proceedings.

**BACKGROUND**

Plaintiff filed an application for Social Security Disability ("SSD") benefits and Supplemental Security Income ("SSI") on January 9, 2012 (T. 77, 79, 130, 132).[3] She claims she became disabled on September 13, 2010 due to a lumbar disc herniation and displacement of cervical discs in her neck (T. 168). Her past relevant work was as a babysitter, home health aide, line cook, and maintenance worker (T. 54, 165). After her claim was denied, plaintiff requested a hearing, which took place before Administrative Law Judge ("ALJ") William Weir on May 31,

---

[1]   Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2]   Bracketed references are to the CM/ECF docket entries.

[3]   References denoted as "T" are to the transcript of the administrative record.

2013 (T. 30-63). On April 23, 2014, ALJ Weir determined that plaintiff was not disabled (T. 8-19). Plaintiff requested review by the Appeals Council, which was denied on October 28, 2015, making the ALJ's determination the final decision of the Acting Commissioner (T. 1-3). Plaintiff thereafter commenced this action.

## ANALYSIS

**A.   Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well-settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. In this case, it is not disputed that: plaintiff is not currently engaged in substantial gainful activity and that plaintiff's severe impairments do not meet or equal the listings in Appendix 1 of the regulations. At issue here is whether ALJ Weir's decision, at step-five of the sequential process, that plaintiff retains the residual functional capacity to perform work, is supported by substantial evidence. The Acting Commissioner bears the burden at step-five. *See* Talavera v. Astrue, 697 F.3d 145 (2d Cir. 2012).

**B.     Plaintiff's Back Impairment**

Plaintiff suffered a back injury resulting from an automobile accident on September 13, 2010 (T. 276, 363). She initially received treatment from Dr. Michael Cardamone, a chiropractor (T. 363). On February 1, 2011, plaintiff was referred to Dr. Franco E. Vigna, an orthopedic surgeon (T. 363). At that time, plaintiff rated her neck pain as "7-8/10" and her low back pain as "6/10". Id. She also complained of minor episodic anxiety and depression following the motor vehicle accident (T. 364). Upon examination, Dr. Vigna noted that plaintiff was obese, and that she had a positive Hoffman sign[4] bilaterally. Id. He stated that an MRI demonstrated pressure on the bilateral descending route at L5-S1 and L4-L5, as well as decreased disc height at C4-C5 and C5-C6 with posterior disc protrusion at C5-C6 (T. 364-65).

On July 27, 2011, Dustin Ceratt, a physician's assistant ("PA") in Dr. Vigna's office reported that plaintiff's neck pain had worsened to "9-10/10" and that she no longer received chiropractic treatment because "those services were cut off" (T. 368). Because Dr. Vigna was too busy to see her on that date, an appointment was made for plaintiff to return to see Dr. Vigna to discuss surgical options. Id. PA Ceratt stated that plaintiff "continues to be unable to return to her employer at this time due to her significant pain". Id.

Plaintiff was examined by Dr. Vigna on August 11, 2011, at which time she continued to complain of severe neck pain, as well as pain in her upper extremity, with numbness and tingling (T. 370). On September 14, 2011 plaintiff underwent cervical decompression

---

[4]   "Hoffman's sign is present if tapping the nail on the third or fourth finger elicits involuntary flexion of the distal phalanx of the thumb and index finger," which indicates spinal cord compression. Dale v. Astrue, 2011 WL 2621539, *3 n. 3 (E.D.Mo. 2011) (*citing* The Merck Manual of Diagnosis and Therapy 325 (18th ed.2006)).

surgery including the fusion of her vertebrae at C4-C5, C5-C6, and C6-C7 (T. 276). An intervertebral biomechanical device placed at C4-C5, C5-C6 and C6-C7. Id.

A postoperative report dated September 20, 2011 states that plaintiff's neck pain had improved (T. 378). Plaintiff denied any neck pain during a post-operative examination on October 20, 2011 (T. 384). However, on December 15, 2011, plaintiff reported that her neck pain, which she rated "4-6/10", had returned (T. 386). During an examination by Dr. Vigna on July 11, 2012, she "to complain of some neck pain with more spasm into her trapezius bilaterally. She has numbness and tingling into her fingertips bilaterally" (T. 400). Because plaintiff was afraid that physical therapy would increase her pain, Dr. Vigna started her on massage therapy. Id.

Plaintiff also saw Dr. Prathibha Bansal, a pain management specialist. In a report dated May 30, 2012, Dr. Bansal noted that plaintiff complained of cervical pain which was "constant, it is aching and burning pain. It is aggravated by activity. It is relieved by resting lying down medications [sic]. It radiates down her arms to the fingers on the right and left and is associated with tingling and numbness in the thumb, index, middle ring and little finger. It is associated with weakness in the right and left hand and she drops things" (T. 412). Dr. Bansal noted that plaintiff had cervical spine surgery in September 2011 but that it "did not help". Id. She also noted that plaintiff had tried a TENS unit "with no relief". Id. Plaintiff was prescribed Benadryl, Lortab, and Soma. Id.

On September 11, 2012, Dr. Bansal reported that exercises were not helping to reduce plaintiff's pain, but that the TENS unit was providing some help (T. 419). Amitriptyline and Feldene were added to plaintiff's medication regimen of Benadryl, Lortab and Soma. Id. Dr. Bansal instructed plaintiff to use the TENS unit more frequently and counsel plaintiff with

respect to a cervical spine exercise program (T. 420). August 9, 2012, Dr. Bansal reported that plaintiff was still going to physical therapy but was "taking it slow because it is so painful" (T. 421). She now reported that both the TENS unit and physical therapy[5] were helping. Id. Fentanyl was added to plaintiff's pain medicine regimen. Id.

On August 9, 2012 Dr. Vigna completed and "employability assessment" in which he stated that plaintiff would be "moderately limited" with respect to walking, standing, sitting, lifting, carrying, using stairs or other climbing, and in the ability "to function in a work setting at a consistent pace" (T. 425). He stated that plaintiff could not work around heights or heavy machinery, could not perform work which required repetitive bending, twisting or stooping, and could not lift greater than 15 pounds. Id. Dr. Vigna stated that these restrictions were permanent. Id.

Dr. Vigna's reports dated October 26, 2012 and February 14, 2013 reflect plaintiff's continued cervical pain (T. 431-39). His October 26, 2012 notes indicate that plaintiff reported significant pain into her shoulders bilaterally (left worse than right), and numbness into her fingertips (T. 431). Upon examination Dr. Vigna stated that there was a positive impingement sign in her bilateral upper extremities left worse than right, and a positive liftoff test in her left upper extremity. Id. On February 14, 2013, Dr. Vigna reported that plaintiff continued to complain of neck pain as well as pain into her trapezius bilaterally (T. 434). He noted that plaintiff's symptoms prevent her from carrying her laundry up and down the stairs, and render her unable to take out the garbage, or carry groceries into her house (T. 438). Dr.

---

[5]  In a report dated October 17, 2012, Dr. Bansal reported that she had received a note from physical therapy stating that plaintiff "did not attend and was lying" (T. 445). During her November 14, 2012 appointment with Dr. Bansal, plaintiff stated that she did not go to physical therapy that year because of transportation issues (T. 447).

Vigna stated that plaintiff has a known "L4-5 lumbar disc bulge with annular tears" and recommended a CT discogram (T. 439).

In a report dated February 6, 2013, Dr. Bansal stated that plaintiff complained of pain in her shoulders bilaterally (T. 450). She noted that plaintiff was going to have an EMG performed. Id. She also noted that plaintiff's shoulders were swollen. Id. Because the plaintiff was not interested in injections, Dr. Bansal stated that she had "reached a plateau with the treatment I can offer" and was discharged back to her primary physician (T. 451). This report also states that plaintiff "will find another physician due to distance". Id.

C. ALJ Weir's Determination

ALJ Weir found that plaintiff suffers from severe impairments including obesity and post-cervical surgery degenerative disc disease of the cervical and lumbar spine (T. 11). However, he determined that plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except that plaintiff could not lift greater than 15 pounds, could not work at heights or operate heavy machinery, and could only occasionally bend, twist or stoop (T. 13).

These functional limitations are similar to the limitations assessed by Dr. Vigna in the August 9, 2012 evaluation, with the exception that Dr. Vigna had also found that plaintiff would have moderate difficulty maintaining a consistent pace in a work setting (T. 425). ALJ Weir rejected that part of Dr. Vigna's assessment, stating: "I do not agree with the moderate mental limitation he indicated . . . because it is inconsistent with the claimant's self-report of ability to follow written and spoken instructions, pay attention for extended periods, watch television, and spend the day reading" (T. 15).

Plaintiff argues that ALJ Weir failed to provide good reasons to disregard Dr. Vigna's treating opinion regarding her ability to work at a consistent pace. Plaintiff's Memorandum of Law [8-1], p. 17. "[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[.]" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons' " for the weight given to a treating source opinion. Id. at 32 *quoting* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific". Blakely v. Commissioner of Social Security, 581 F.3d 399, 406 (6th Cir. 2009) *quoting* SSR 96–2p, 1996 WL 374188, *5 (S.S.A. July 2, 1996)). The "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process[.]" Rogers v. Commissioner of Social Security, 486 F.3d 234, 243 (6th Cir. 2007). An ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given *denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based on the record." Blakely, 581 F.3d at 407 (emphasis in original).

The only basis articulated for the rejection of Dr. Vigna's opinion regarding plaintiff's ability to work at a consistent pace were plaintiff's purported statements regarding her ability to follow instructions, pay attention, watch television and read. ALJ Weir does not cite to these attributed statements in the record. Although plaintiff did state that she did not have "problems paying attention" or following spoken and written instructions (T. 181), the record does not reflect that she stated she could do so "for extended periods" as reported by ALJ Weir. Moreover, plaintiff's ability to perform these functions to some extent does not demonstrate that

she could function in a work setting at a consistent pace for a sustained period of time sufficient to carry on substantial gainful activity. The performance of basic activities of daily living does not disqualify a person from being disabled under the Social Security Act. <u>Niles v. Astrue</u>, 32 F. Supp. 3d 273, 287 (N.D.N.Y. 2012). It is well settled that "such activities do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." <u>Niles</u>, 32 F. Supp.3d at 287; *see also* <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir.1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act."). ALJ Weir did not provide good reasons for rejecting Dr. Vigna's treating opinion as to plaintiff's ability to work at a consistent pace.

Furthermore, in choosing to reject the evaluation of a treating physician, "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion". <u>Morse v. Astrue</u>, 2013 WL 3282883, *4 (W.D.N.Y. 2013) (internal quotes omitted). Here, ALJ Weir failed to cite any medical evidence in the record contradicting Dr. Vigna's opinion as to plaintiff's ability to work at a consistent pace.

Finally, plaintiff asserts that ALJ Weir erred in assuming that Dr. Vigna's opinion as to plaintiff's ability to work at a consistent pace was a mental limitation, as opposed to a physical limitation. Plaintiff's Memorandum of Law [8-1], p. 17. Although the box Dr. Vigna checked to indicate that plaintiff would have difficulty working at a consistent pace was on the part of the form relating to plaintiff's mental functioning, plaintiff argues that because Dr. Vigna

only treated plaintiff for orthopedic issues, it would have been appropriate to assume that Dr. Vigna was indicating that this limitation was physical. Id.

In this regard, it should be noted that plaintiff did not assert a significant mental impairment as the basis of her disability (T. 168). Dr. Bansal's reports indicate that the pain, numbness and tingling which shoots down plaintiff's shoulder into her hand makes her drop things (T. 412). Although Dr. Vigna does not identify these findings as the basis for his opinion that plaintiff would have difficulty working at a consistent pace, his reports regarding plaintiff's pain, numbness and tingling are consistent with those of Dr. Bansal. (T. 431, 434-38). Plaintiff's testimony, including that pain, numbness and tingling shoots down her legs making it difficult for her to walk at times (T. 41) and causes her hand to swell (T. 43), would also support a finding that she has a limited ability to work at a consistent pace. Plaintiff seeks a remand for further consideration of Dr. Vigna's opinion and, if necessary, vocational testimony as to the impact of a moderate limitation to work at a consistent pace on plaintiff's ability to work. Plaintiff's Memorandum of Law [8-1], p. 21. In the face of this record, rather than summarily rejecting Dr. Vigna's opinion as to this limitation, ALJ Weir should have recontacted Dr. Vigna or further developed the record to clarify how her symptoms would limit her ability to work at a consistent pace.

In sum, ALJ Weir failed to provide good reasons to reject the opinion of Dr. Vigna and failed to adequately develop the record with respect to plaintiff's ability to work at a consistent pace.

**CONCLUSION**

For these reasons, I recommend that plaintiff's motion for judgment on the pleadings [8] be granted to the extent that this case be remanded for further administrative

proceedings; and that the Acting Commissioner's motion for judgement on the pleadings [11] be denied.

Unless otherwise ordered by District Judge Michael A. Telesca, any objections to this Report and Recommendation must be filed with the clerk of this court by November 21, 2017. Any requests for extension of this deadline must be made to Judge Telesca. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 7, 2017

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge